UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MISAEL AVILA AND SERGIO AVILA,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>NAIMAT KADAH INTERNATIONAL INC.<br>*dba* KABAB AND CURRY'S AND<br>MOHAMMAD USMAN,<br><br>　　　　　Defendant. | Case No.: C 11-1771 PSG<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>**(Re: Docket No. 49)** |

　　　　All things must eventually come to an end.  Cases are no different – when the parties stipulate to dismissal, the court dismisses the case, closes the file pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), and sends the parties on their way.  One exception is where the parties expressly agree that the court retains jurisdiction over the case for purposes of enforcing the settlement agreement, which is what happened here.

　　　　On July 6, 2012, Plaintiffs Misael Avila and Sergio Avila ("Plaintiffs") and Defendants Naimat Kadah International Inc. *dba* Kabab and Curry's and Mohammad Usman ("Defendants") settled their dispute regarding Plaintiffs' wage and hour claims under the Fair Labor Standards Act and the California Labor Code.  The parties reduced their agreement to a written Settlement Agreement, which provides that Defendants are to pay Plaintiffs a total sum of $56,000, consisting

1

Case No.: 11-1771 PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

of a first installment of $28,000 due within 30 days of the execution of the Agreement and a second installment of $28,000 due within 90 days of the Agreement.[1] Four days later, on July 10, 2012, the parties filed a stipulated dismissal of the case pursuant to settlement and requested the court to retain jurisdiction to enforce the settlement.[2] The court approved the stipulated dismissal and closed the case.[3]

Soon thereafter, Plaintiffs' counsel informed Defendants' counsel of the breakdown of the amounts due to Plaintiffs and Plaintiffs' counsel and requested payment.[4] On January 16, 2013, Defendants paid Plaintiffs' counsel $11,692.[5] On May 10, 2013, Defendants made a second payment to Plaintiffs' counsel, again for $11,692.[6] The remaining $33,108, however, has never been paid.[7] Plaintiffs have returned to this court to seek enforcement of the settlement agreement.

Defendants argue the court does not have jurisdiction to hear this dispute. The court disagrees. Because the parties explicitly requested that the court retain jurisdiction to enforce the Settlement Agreement, the court may do so upon motion of one of the parties.[8]

The Settlement Agreement language also does not stand in the way of court enforcement. Defendants contend the following phrase in the Settlement Agreement requires the parties to use arbitration to settle any disputes:

---

[1] *See* Docket No. 50, Ex. 1.

[2] *See* Docket No. 47.

[3] *See* Docket No. 48.

[4] *See* Docket No. 50, Ex. 2.

[5] *See* Docket No. 50, Ex. 3.

[6] *See* Docket No. 50, Ex. 4.

[7] *See* Docket No. 50 ¶ 11.

[8] *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381-82 (1994) (court may retain jurisdiction over the settlement contract by providing as much in its dismissal order).

> Except the ex parte proceeding to obtain the judgment caused by the Company's breach under this Agreement for unpaid balance and the attorney's fees in enforcing this Agreement, the Parties agree that any dispute regarding any aspect of this Agreement, including the confidentiality provisions, shall be submitted exclusively to final and binding arbitration [].

Defendants completely ignore the preamble, which provides that the exception to arbitration is an ex parte court proceeding, which is appropriate "[i]n the event of a default on payment."[9] That is exactly the situation here. Defendants did not pay the balance of the settlement amount, forcing Plaintiffs to "apply ex parte for entry of the Stipulated Judgment" with the court.[10]

Defendants next contend that they do not have to pay Plaintiffs the remainder have not provided valid taxpayer identification numbers. Neither the Settlement Agreement nor the relevant laws require Plaintiffs to do so before Defendants' obligation accrues. An employer must pay employees wages when due, with or without a valid Social Security Number or ITIN.[11] Nowhere does the Settlement Agreement require Plaintiffs to provide valid Social Security Numbers or ITINs as a condition precedent to Defendants' payment of the settlement amount. Defendants are plainly required to "pay to Misael Avila and Sergio Avila the gross amount of $56,000" with no conditions preceding that requirement.[12] Plaintiffs' obligation to pay taxes appears elsewhere:

> Avilas agree to pay all federal or state taxes owed by Avilas, if any, which are required by law to be paid with respect to the payments herein. Avilas further agree to indemnify and hold the Company harmless from any taxes owed by Avilas, including interest or penalties owed by Avilas, on account of this Agreement and the settlement payment under this Agreement.[13]

---

[9] Docket No. 50, Ex. 1 at 1.

[10] *Id.* The court notes that the same clause enables Plaintiffs to request "reasonable expenses, including attorney's fees in enforcing the Agreement."

[11] *Cf. Patel v. Quality Inn S.*, 846 F.2d 700, 703 (11th Cir. 1988) (citing *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 891 (1984)) (ruling that undocumented aliens are "employees" under the broad definition of the FLSA).

[12] Docket No. 50, Ex. 1 at 1.

[13] *Id.* at 2.

3
Case No.: 11-1771 PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

The fact that the Avilas are fully responsible for paying taxes on the settlement amount, and furhter are bound to *indemnify* Defendants for any taxes Defendants incur after payment is made, demonstrates that those obligations are separate and apart from Defendants' independent obligation to pay the settlement amount.

To be sure, Defendants have raised the legitimate question of what they should report to the IRS. Plaintiffs have suggested that IRS Publication 15 (Circular E) of the Employer's Tax Guide 2013 recommends that "[i]f you file Form W-2 on paper and your employee applied for an SSN but does not have one when you file form W-2, enter "Applied For" on the form. If you are filing electronically, enter all zeros (000-00-000) in the social security number field."[14] Plaintiffs have represented that after calling the IRS hotline, the IRS agent advised the same with a withholding requirement of the maximum 30% rate.[15] Without determining whether this is the correct procedure, the court finds that Defendants have not shown that this procedure would be invalid. Absent evidence to the contrary, the court finds that Defendants have shown no legal reason preventing them from making their settlement payment.

In sum, Defendants have no excuse for withholding the remaining settlement payments. The motion is GRANTED and judgment in favor of Plaintiffs in the amount of $33,108 is entered.

**IT IS SO ORDERED.**

Dated: September 16, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[14] Docket No. 56, Ex. 16 at 13.

[15] *See* Docket No. 56 ¶ 21.

4

Case No.: 11-1771 PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT